**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| YVONNE M. WEST, individually and as Administrator of the Estate of Jamon West,<br><br>Plaintiff,<br><br>v.<br><br>DEKALB COUNTY, GEORGIA; CAPT. PHILLIP DITMORE; SFF. DAVID KELLY; SFF. JASON WINKLER; SFF. KEVIN FLEMING; FF. JONAH LAKATOS; FF. TIFFANY PAYNE; DO MELISSA VAN WIE; SGT. M. WILLIAMS; OFF. TIMOTHY LATTIMORE; OFF. BRANDON W. WILLIAMS; OFF. DEION PAXTON; OFF. C. JONES; and OFF. JOSHUA BURTON,<br><br>Defendants. | * * * * * * * * * * * * * * * * * * * * | Civil Action No.:<br><br>**Jury Trial Demanded** |

**COMPLAINT FOR DAMAGES**

YVONNE M. WEST, individually and as Administrator of the Estate of Jamon West ("Plaintiff"), files this Complaint for Damages against Defendants DEKALB COUNTY, GEORGIA; CAPT. PHILLIP DITMORE; SFF. DAVID KELLY; SFF. JASON WINKLER; SFF. KEVIN FLEMING; FF. JONAH LAKATOS; FF. TIFFANY PAYNE; DO MELISSA VAN WIE; SGT. M. WILLIAMS; OFF. TIMOTHY LATTIMORE; OFF. BRANDON W. WILLIAMS; OFF. DEION PAXTON; OFF. C. JONES; and OFF. JOSHUA BURTON ("Defendants"), showing this Honorable Court the following:

**Introduction**

1.

This is a civil action arising from the homicide of Jamon West and asserting claims pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132-12133, and the Civil Rights Act of 1871, 42 U.S.C §§ 1983 and 1988. Plaintiff demands a jury trial and seeks an award of damages, as well as an award of attorneys' fees and costs.

**Parties, Jurisdiction, and Venue**

2.

Plaintiff Yvonne M. West is a resident of DeKalb County, Georgia. She is the mother of the late Jamon West and brings this action as administrator of his Estate.

3.

Defendant DeKalb County, Georgia ("DeKalb") is a political subdivision of the State of Georgia with the capacity to sue and be sued. At all relevant times, DeKalb operated the DeKalb Police Department ("DKPD") and DeKalb County Fire Rescue ("DCFR"). The official policies and practices of DKPD and DCFR are imputable to DeKalb County. DeKalb may be served with Summons and a copy of the Complaint through its Chief Executive Officer, Michael Thurmond, at his place of employment located at the Manuel J. Maloof Center, 1300 Commerce Drive, 6th Floor, Decatur, Georgia, 30030.

4.

Defendant Captain Phillip Ditmore is an officer of DeKalb employed by DCFR. At all times relevant to this complaint, Capt. Ditmore acted under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

5.

Defendant Senior Firefighter David Kelly is an officer of DeKalb County employed by DCFR. At all times relevant to this complaint, SFF Kelly acted under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

6.

Defendant Senior Firefighter Jason Winkler is an officer of DeKalb County employed by DCFR. At all times relevant to this complaint, SFF Winkler acted under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

7.

Defendant Firefighter Jonah Lakatos is an officer of DeKalb County employed by DCFR. At all times relevant to this complaint, SFF Lakatos acted under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

8.

Defendant Firefighter Tiffany Payne is an officer of DeKalb County employed by DCFR, At all times relevant to this complaint, FF Payne acted under color of state law and in her capacity as an officer of Defendant DeKalb County. She is sued in her official and individual capacities.

9.

Defendant DO Melissa Van Wie is an officer of DeKalb County employed by DCFR. At all times relevant to this complaint, DO Van Wie acted under color of state law and in her capacity as an officer of Defendant DeKalb County. She is sued in her official and individual capacities.

10.

Defendant Officer Timothy Lattimore is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. At all times relevant to this action, Defendant Lattimore was acting under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

11.

Defendant Officer Brandon W. Williams is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. At all times relevant to this action, Defendant Williams was acting under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

12.

Defendant Officer Deion Paxton is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. At all times relevant to this action, Defendant Paxton was acting under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

13.

Defendant Officer C. Jones, Badge No. 3212, is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. At all times relevant to this action, Defendant

Jones was acting under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

14.

Defendant Officer Joshua Burton is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. At all times relevant to this action, Defendant Burton was acting under color of state law and in his capacity as an officer of Defendant DeKalb County. He is sued in his official and individual capacities.

15.

This action is timely filed. The incident in suit occurred on August 16, 2019. Pursuant to O.C.G.A. § 9-3-99, the two-year limitations period for these causes of action was tolled because the causes of action arise from an alleged crime of homicide, which was referred to the DeKalb County District Attorney's Office. The prosecution terminated on April 28, 2021, when District Attorney Sherry Boston sent letters to DKPD and DCFR stating that she would not press charges against any of the Defendant officers. This action is brought within two years of the termination of prosecution.

16.

Venue is proper in this District.

## **Factual Allegations**

17.

At all relevant times, Jamon West lived with his mother at 6076 Creekford Drive, Lithonia, in DeKalb County, Georgia. Mr. West was 42 years old and had a seizure disorder for which he was under the care of physicians.

18.

On August 16, 2019, as a result of his disorder, Jamon West suffered an episode of behavioral crisis commonly known in the law-enforcement community as "excited delirium."

19.

Excited delirium is not itself a medical diagnosis, but rather a phenomenon associated with certain types of substance abuse or psychiatric/neurological disorders. Patients are described as having excited delirium when they exhibit extreme agitation, hyperactivity, hyperthermia, confusion, and disregard of pain.

20.

Mr. West could not control his symptoms and pleaded with his mother to help him.

21.

Mr. West's mother called DeKalb County 9-1-1. She told the 9-1-1 operator that her son was having a seizure, that she could not control him, and that she needed help.

22.

Mr. West was not under the influence of any illegal drugs.

23.

DCFR officers Winkler and Lakatos initially responded to the call. They could see that Mr. West was highly agitated, hyperactive, confused, and not in control of his behavior.

24.

It is well known in the law-enforcement and medical communities that excited delirium, when combined with certain forms of restraint, creates a heightened risk of cardiac arrhythmia and/or asphyxia.

25.

In 1995, the United States Department of Justice stated in written guidance to law-enforcement agencies that "the risk of positional asphyxia is compounded when an individual with predisposing factors becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes use of behind-the-back handcuffing combined with placing the subject in a stomach-down position."

26.

In a 2017 policy statement, the National Association of EMS Physicians stated that prone restraint, with or without hands restrained behind the back, "should be expressly prohibited" by EMS agency protocols for patients with excited delirium.

27.

Defendants Winkler and Lakatos made the decision to physically restrain Mr. West. They restrained him in a prone position, face down on the ground.

28.

DCFR Defendants Ditmore, Kelly, Van Wie, and Fleming arrived and assisted Winkler and Lakatos in physically restraining Mr. West.

29.

Mr. West was restrained face down on the ground, with four or five firefighters applying force to all four extremities and to his back.

30.

During this time, Yvonne West cried for the defendants to stop restraining her son as they were doing, and told them that he could not breathe as his face was pressed in the grass.

31.

Ms. West went back inside her house to get a bed sheet, which she offered to defendants so that Mr. West could get his face off the dirt.

32.

In response, one of the defendant officers told Ms. West that she would be arrested if she did not back away.

33.

Captain Ditmore took command of the scene.

34.

Captain Ditmore directed Firefighter Payne to administer a “chemical restraint,” which is an intramuscular injection of sedative medications.

35.

Payne gave Mr. West the maximum dose permitted by DeKalb County policy, which was 5 mg of Haldol and 5 mg of Versed.

36.

Both Haldol and Versed are central nervous system depressants.

37.

Both Haldol and Versed have a known risk of respiratory depression.

38.

DKPD officers responded to the scene.

39.

Captain Ditmore asked the DKPD officers to handcuff Mr. West.

40.

DKPD officers Lattimore and Williams, assisted by Captain Ditmore, cuffed Mr. West's hands behind his back.

41.

Captain Ditmore then questioned the officers present as to their status, walked away from Mr. West with his back to the scene, and made a status report to Battalion Four by radio.

42.

During the time Captain Ditmore did these things, Mr. West remained prone on the ground with his hands cuffed behind his back.

43.

Being restrained in a prone position with hands cuffed behind the back reduces a patient's ability to breathe and creates an increased risk of asphyxia and/or arrhythmia.

44.

Neither Payne nor Ditmore told the officers restraining Mr. West that he should not be restrained in a prone position with hands cuffed behind his back.

45.

Defendants Jones and Paxton arrived while Mr. West was restrained in a prone position.

46.

Defendants Jones and Paxton stood by as support for the other officers and failed to intervene to prevent the other officers from continuing to restrain Mr. West in a prone position.

47.

DeKalb County's officers continued to restrain Mr. West in this manner long enough for the sedatives to take effect.

48.

When Captain Ditmore completed his status report, he returned to the scene and observed that Mr. West was calm.

49.

Captain Ditmore then ordered the handcuffs removed and replaced with soft restraints.

50.

As Defendants were beginning to transport Mr. West across his mother's yard, his respiratory rate dropped and he went into cardiac arrest.

51.

Mr. West was transported to the hospital, where lingered in a coma for a period of days and then died on August 25, 2019.

52.

The DeKalb County Medical Examiner performed an autopsy and determined that Mr. West died of "[d]elayed complications of cardiorespiratory arrest due [to] probable excited delirium and physical restraint."

53.

The DeKalb County Medical Examiner determined that the manner of death was "homicide."

54.

DeKalb County conducted an internal investigation and determined that the DKPD and DCFR officers involved in Mr. West's death acted in accordance with DeKalb County policy.

**Count I – DeKalb County's Failure to Adopt Reasonable Modifications of Policies and Procedures**

55.

At all relevant times, DeKalb County was a public entity subject to the requirements of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 ("ADA").

56.

At the time of the incident-in-suit, Mr. West was a qualified individual with a disability within the meaning of the ADA.

57.

Once Mr. West was held down by DeKalb's officers, he did not pose a "direct threat" within the meaning of the ADA and its implementing regulations, because he was unarmed, physically restrained, and surrounded by at least a dozen officers.

58.

Excited delirium is a well-recognized condition that is known to result from a number of underlying medical conditions. Many governmental agencies around the country have enacted policies and procedures directing their officers how to address excited delirium.

59.

DeKalb County policymakers, including the Chief of Police and the Fire Chief, had actual knowledge at all relevant times that excited delirium is associated with an increased risk of death in custody, and that ordinary restraint procedures must be modified when a subject has excited delirium in order to avoid creating an unreasonable risk of death.

60.

In fact, those DeKalb County policymakers have adopted policies and procedures for both DCFR and DKPD addressing excited delirium.

61.

However, DeKalb's policies and procedures are unreasonably deficient, particularly with regard to the policies governing DKPD officers.

62.

The DKPD policy manual mentions excited delirium only within the section on "Electronic Control Devices – Tasers." It does not address modified restraint procedures for adults with excited delirium.

63.

It is well known that prone restraint of persons with excited delirium creates an increased risk of positional asphyxia and cardiac arrythmia, especially when the subject's hands are cuffed behind the back.

64.

Prohibiting prone restraint of persons with excited delirium is a reasonable modification of policies and procedures adopted by many agencies as a means of preventing death in custody.

65.

For exactly this reason, DCFR's policy regarding restraint of adults with excited delirium states, in bold red type, **"The patient should never be oriented in a prone position."**

66.

DKPD's policies do not prohibit prone restraint of a subject with excited delirium.

67.

Prohibiting behind-the-back handcuffing of persons with excited delirium is a reasonable modification of policies and procedures adopted by many agencies as a means of preventing death in custody.

68.

DCFR's policies permit only soft medical restraints to be used on excited-delirium patients.

69.

DKPD's policies do not prohibit behind-the-back handcuffing of persons with excited delirium.

70.

DeKalb's policies and procedures do not require officers to place a subject in a seated or side-lying position after being cuffed, to prevent impairment of breathing and decreased oxygen supply to the heart.

71.

Requiring officers to place an excited-delirium subject in a seated or side-lying position after being cuffed is a reasonable modification of policies and procedures adopted by many agencies as a means of preventing death in custody.

72.

DeKalb's officers knew or should have known that Jamon West had excited delirium.

73.

Despite that knowledge, they restrained him in a prone position with weight on his back and then left him in a prone position with his hands cuffed behind his back, after administering respiratory depressant medications. This created an unreasonable risk of cardiorespiratory arrest.

74.

As a result of his excited delirium and Defendants' improper restraint, Jamon West died of cardiorespiratory arrest.

75.

The individual Defendants' improper restraint of Jamon West was a proximate result of DeKalb's failure to adopt reasonable modifications of its policies and procedures.

76.

Through official internal review, DeKalb specifically ratified the conduct of its officers by finding that they complied with its policies and procedures in restraining Jamon West.

77.

DeKalb County's failure to adopt reasonable policies and procedures for restraint of patients with excited delirium, despite actual knowledge that such policies and procedures are necessary to prevent an unreasonable risk of death, constitutes deliberate indifference to the rights of patients with disabilities that cause excited delirium, such as Jamon West.

78.

Because of DeKalb County's deliberate indifference, Plaintiff is entitled to an award of damages for Jamon West's injuries and death.

**Count II: DeKalb County's Failure to Provide Reasonable Accommodations**

79.

At all relevant times, all of the individual Defendants acted in their official capacities as officers and agents of DeKalb County.

80.

As the commanding officer pursuant to DeKalb County's official policies, Captain Phillip Ditmore was the officer vested by DeKalb County with the authority to make decisions at the scene regarding accommodations for Jamon West's disability.

81.

Captain Ditmore knew that Jamon West was experiencing excited delirium as a symptom of a disabling medical condition.

82.

Jamon West's mother told DeKalb County's officers, including Captain Ditmore, that Mr. West's abnormal behavior was the result of a medical condition for which he took prescription medications.

83.

At all relevant times, DeKalb County's officers had actual knowledge that Jamon West had a medical condition that substantially limited the major life activities of thinking and controlling his behavior.

84.

At all relevant times, Jamon West was a qualified person with a disability under the Americans with Disabilities Act.

85.

At all relevant times, DeKalb County's officers personally observed and thus had actual knowledge that Jamon West had excited delirium.

86.

Among other things, DeKalb County's officers observed the symptoms of excited delirium including extreme agitation, hyperactivity, confusion, disregard of pain, elevated body temperature, and sweating.

87.

DeKalb County's officers, specifically Captain Ditmore and FF Payne, knew that they had administered the maximum dose of Haldol and Versed to Mr. West, increasing his risk of respiratory depression.

88.

DCFR's policy manual specifically warns that the potential side effects of Versed include respiratory depression and the inability to maintain an airway.

89.

DeKalb County's officers did not modify their restraint procedures in the ways that are widely recognized as necessary to prevent cardiorespiratory arrest in a patient with excited delirium.

90.

DeKalb County's officers did not accommodate Mr. West's disability by avoiding prone restraint; by cuffing in the front rather than behind the back; or by placing him in a sitting or side-lying position after he was cuffed.

91.

Mr. West could not request these accommodations because of his disability; but the need for such accommodations is so widely recognized in the law-enforcement community that a specific request was not necessary to inform DeKalb County's officers of that need.

92.

DeKalb County had more than a dozen officers at the scene and could have provided these accommodations.

93.

As a result of DeKalb County's failure to provide reasonable accommodations for his disability, Mr. West suffered cardiorespiratory arrest and died.

94.

Plaintiff is entitled to an award of damages for DeKalb County's deliberate indifference to Jamon West's need for reasonable accommodations.

**Count III: DeKalb County's Failure to Train**

95.

The fact that prone restraint and behind-the-back handcuffing create an increased risk of in-custody death for subjects with excited delirium has been widely known in the national law-enforcement community since at least the 1990s.

96.

For example, in 1995, the United States Department of Justice warned local law-enforcement agencies in published guidance from the National Law Enforcement Technology Center that prone restraint and behind-the-back handcuffing increased the risk of sudden in-

custody death of subjects with certain predisposing conditions, including excited delirium or recent extreme physical activity such as a struggle with officers.

97.

At all relevant times, DeKalb County's relevant policymakers, including its Chief of Police and its Fire Chief, had actual knowledge that prone restraint and behind-the-back handcuffing create an increased risk of in-custody death for subjects with excited delirium.

98.

Despite this knowledge, DeKalb County did not train DKPD officers and firefighters that these methods of restraint were dangerous and increased the risk of in-custody death.

99.

In addition, DeKalb County did not provide guidance to DKPD officers through its use-of-force policy that these methods of restraint could be lethal.

100.

DeKalb County's failure to train its officers to avoid this known and preventable risk of death was unreasonable.

101.

DeKalb County's deliberate indifference to the need for such training caused Jamon West to be injured and killed when more than a dozen of DeKalb's officers either used, or stood by and failed to prevent others from using, life-threatening restraint techniques that all of these officers should have been trained to avoid.

102.

Because of DeKalb County's deliberate indifference to this need for training, Plaintiff is entitled to an award of damages for Jamon West's injuries and death.

**Count IV: Excessive Force Against Defendants**

**Ditmore, Lakatos, Winkler, Kelly, Van Wie, Fleming, Lattimore, and Williams**

103.

Defendants Ditmore, Lakatos, Winkler, Kelly, Van Wie, Fleming, Lattimore, and Williams (collectively the "Excessive Force Defendants") all participated in the improper restraint of Jamon West.

104.

All of the Excessive Force Defendants assisted in restraining Jamon West in a prone position with pressure on his back.

105.

All of the Excessive Force Defendants assisted in restraining Jamon West while Ditmore, Lattimore, and Williams cuffed his hands behind his back.

106.

The use of prone restraint and behind-the-back handcuffing, under the circumstances, was excessive and subjected Jamon West to an unreasonable and unnecessary risk of death.

107.

Jamon West suffered cardiorespiratory arrest, pain and suffering, and death as a result of the Excessive Force Defendants' excessive and improper use of force.

108.

The actions of the Excessive Force Defendants were objectively unreasonable, and undertaken with reckless indifference to Mr. West's clearly established right to be free of deadly force. Among other things, Mr. West was known to be unarmed; was not suspected of any crime;

was not attempting to flee; and was capable of being restrained safely without the need to cuff him behind the back and hold him in a prone position.

109.

Plaintiff is entitled to an award of damages for Defendants' use of improper force.

**Count V: Deliberate Indifference to Medical Needs**

**Against Defendants Ditmore and Payne**

110.

Upon his arrival, Captain Phillip Ditmore was the officer in charge of the incident scene.

111.

FF Tiffany Payne was the emergency medical technician who administered chemical restraints at Captain Ditmore's command.

112.

Both Captain Ditmore and FF Payne had actual knowledge that Mr. West was experiencing excited delirium.

113.

Both Captain Ditmore and FF Payne had actual knowledge that Mr. West's excited delirium placed him at an increased risk of cardiorespiratory arrest.

114.

Both Captain Ditmore and FF Payne had actual knowledge that Mr. West's excited delirium and extreme physical exertion increased his body's demand for oxygen.

115.

Both Captain Ditmore and FF Payne had actual knowledge that, before chemical restraints were administered, Mr. West had been physically restrained face down on the ground with force applied to his back.

116.

Both Captain Ditmore and FF Payne had actual knowledge that the medications they gave Mr. West were depressants that could make it more difficult for Mr. West to breathe.

117.

Both Captain Ditmore and FF Payne had actual knowledge that being restrained in a prone position with hands cuffed behind the back could make it more difficult for Mr. West to breathe.

118.

Despite the above-described knowledge, Captain Ditmore did not order the officers at the scene to change the manner of Mr. West's restraint so as to facilitate proper breathing. To the contrary, he assisted in cuffing Mr. West behind the back and then left him in a prone position while he walked away and made a radio call.

119.

Despite the above-described knowledge, FF Payne did not change the manner of Mr. West's restraint so as to facilitate proper breathing, nor did she inform the officers restraining Mr. West that it was medically necessary to do so.

120.

As a result of Ditmore and Payne's deliberate indifference to Mr. West's known medical needs, Mr. West suffered and died of cardiorespiratory arrest.

121.

Because of Ditmore and Payne's deliberate indifference to Mr. West's known medical needs, Mr. West's estate is entitled to compensatory damages pursuant to 42 U.S.C. § 1983.

**Count VI: Failure to Intervene**

**Against All Individual Defendants**

122.

All of the individual Defendants were present at the incident scene and observed the improper and life-threatening use of force by the Excessive Force Defendants.

123.

Each of the individual Defendants had an opportunity to intervene to prevent the improper and life-threatening use of force by the Excessive Force Defendants, described in Count IV of this Complaint.

124.

None of the individual Defendants intervened to prevent the Excessive Force Defendants from restraining Jamon West in a prone position with his hands cuffed behind his back.

125.

The individual Defendants' failure to intervene contributed to Jamon West's suffering and death.

126.

Plaintiff is entitled to an award of damages against each of the individual Defendants for their failure to intervene.

**Count VII: Attorneys' Fees and Expenses of Litigation**

127.

Because of DeKalb County's violations of Jamon West's rights under the ADA, Plaintiff is entitled to an award of reasonable attorneys' fees and expenses of litigation.

128.

Because of the individual Defendants' violations of Jamon West's civil rights, Plaintiff is entitled to an award of costs, including but not limited to reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a) That the Court award Plaintiff compensatory, punitive, and/or nominal damages against all Defendants in an amount to be determined by the enlightened conscience of an impartial jury;

(b) That the Court grant Plaintiff her reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(d) That Plaintiff be granted a trial by jury on all issues so triable; and

(e) That Plaintiff be granted such other and further relief as this Court deems just and proper.

This 26th day of April, 2023.

Respectfully submitted,

*s/ Mawuli M. Davis*
ROBERT O. BOZEMAN
Georgia Bar No. 073561
MAWULI M. DAVIS
Georgia Bar No. 212029

**The Davis Bozeman Law Firm, PC**
4153 C Flat Shoals Parkway
Suite 332
Decatur, Georgia 30034
(404) 244-2004
(404) 244-2020 (Fax)
mdavis@davisbozemanlaw.com

*s/ Leighton Moore*
LEIGHTON MOORE
Georgia Bar No. 520701

**The Moore Law Firm, PC**
1819 Peachtree Street NE
Suite 403
Atlanta, Georgia 30309
(404) 285-5724
leighton@moorefirmpc.com

*s/ Cary S. Wiggins*
CARY S. WIGGINS
Ga. Bar No. 757657

**Wiggins Law Group, LLC**
Suite 401
260 Peachtree Street, NW
Atlanta, GA 30303
(404) 659-2880
cary@wigginslawgroup.com

*Attorneys for Plaintiffs*