## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| YVONNE M. WEST, Individually and as Administrator of the Estate of Jamon West, <br><br> Plaintiff, <br><br> v. <br><br> DEKALB COUNTY, GEORGIA, CAPT. PHILLIP DITMORE, SFF. DAVID KELLY, SFF. JASON WINKLER, SFF. KEVIN FLEMING, FF. JOHAN LAKATOS, FF. TIFFANY PAYNE, DO MELISSA VAN WIE, SGT. M. WILLIAMS, OFF. TIMOTHY LATTIMORE, OFF. BRANDON W. WILLIAMS, OFF. DEION PAXTON, OFF. C. JONES, and OFF. JOSHUA BURTON, <br><br> Defendants. | CIVIL ACTION FILE NO. 1:23-CV-01907-ELR |

## DEFENDANTS DEKALB COUNTY, JONES, AND PAXTON'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants DeKalb County, Georgia, Officer Deion Paxton, and Officer Curtis Jones, file this Brief in Support of their Motion to Dismiss Plaintiff Yvonne M. West's Complaint under Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

This is a civil rights case arising out of the death of Plaintiff Yvonne West's decedent, Jamon West ("Mr. West"). West alleges that DeKalb County fire fighters and police officers violated the Fourth Amendment's prohibition on unreasonable seizures by unlawfully restraining Mr. West while he was experiencing a severe mental health and behavioral crisis, and that this ultimately caused Mr. West's death. She also alleges this conduct violated Title II of the Americans with Disabilities Act ("ADA"). She seeks recovery for Mr. West's pre-death pain and suffering, as administrator of the estate, and for the full value of Mr. West's life, as his surviving mother. Despite the tragic outcome, however, West's claims against DeKalb County and DeKalb County Police Officers Paxton and Jones fail.

First, all official capacity claims against the individual defendants should be dismissed because they are redundant of the claims against DeKalb County.

Second, West's wrongful death claims are barred by the two-year statute of limitations. West is wrong in asserting that they were tolled as a result of O.C.G.A. § 9-3-99. The Court of Appeals of Georgia recently and unequivocally rejected this argument.

Third, Officers Paxton and Jones are entitled to qualified immunity on West's claims against them under 42 U.S.C. § 1983, based on their alleged failure to intervene. West does not plausibly plead an underlying constitutional violation arising out of the incident, nor can she demonstrate that any such violation was clearly established at the time of the incident. Accordingly, she cannot state a claim for failure to intervene against Officers Paxton and Jones.

Fourth, as for West's *Monell* claim against DeKalb County, an underlying constitutional violation is a predicate element for such a claim, which the Complaint does not plausibly allege, and, in any event, West does not sufficiently allege deliberate indifference necessary to establish liability.

Finally, West's ADA claims against the County fail because West does not sufficiently allege intentional discrimination against Mr. West because of his alleged disability, and her proffered modifications to certain policies are per se unreasonable, and therefore, cannot establish a failure-to-accommodate claim.

For the reasons discussed more fully below, the Court should GRANT Defendants' Motion to Dismiss and DISMISS the claims against them.

## LEGAL STANDARDS

***Fed. R. Civ. P. 12(b)(6)***. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), West's Complaint must contain sufficient factual material, accepted as true, such that it states a claim "'that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires factual allegations specific enough "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are entitled to a presumption of truth, courts must nevertheless disregard legal conclusions, generic labels, and unadorned recitations of the elements of a cause of action. *See Iqbal*, 556 U.S. at 678–79.

***Qualified Immunity***. When qualified immunity is raised, whether at the pleadings stage or elsewhere, a defendant bears the initial burden of showing that he or she was acting within his or her discretionary authority. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once that showing is made, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Gates v. Khokar*, 884 F.3d 1290, 1297 (11th Cir. 2018).

# BACKGROUND

## *Procedural Background*

Plaintiff Yvonne M. West filed her Complaint on April 26, 2023. She is the surviving mother of her son Jamon West ("Mr. West"). [Doc. 1, Compl. at ¶ 2]. She asserts claims in her capacity as the administrator of Mr. West's estate for his pre-death pain and suffering during the underlying incident. [*See id.* at ¶ 2]. She also appears to assert claims for wrongful death as Mr. West's surviving mother. [*See id.*].[1]

Defendants are DeKalb County, Georgia, and various DeKalb County fire fighters and police officers who were involved in the underlying incident. [*See id.* at ¶¶ 3–14]. DeKalb Police Officers Deion Paxton and Curtis Jones responded to the underlying incident to assist the fire fighters and police officers [*Id.* at ¶ 45].

---

[1] Under the Wrongful Death Act, O.C.G.A. §§ 51-4-1, *et seq.*, a surviving parent may bring an action to recover for "the full value of the life" of a child, *see* O.C.G.A. § 1-4-1(1), when the decedent is survived by no spouse or children. *See* O.C.G.A. § 1-4-4 ("The right to recover for the homicide of a child shall be as provided in Code Section 19-7-1"); O.C.G.A. § 19-7-1(c) (authorizing recovery by a parent where no spouse or child survives the decedent). On the other hand, Code section 9-2-41, the "non-abatement statute," allows an estate "to bring (or continue) a personal injury action against the wrongdoer," *Bibbs v. Toyota Motor Corp.*, 304 Ga. 68, 72 n.6 (2018), for the decedent's pre-death pain and suffering and for certain other compensatory damages, accruing to the estate. *See id.* at 74 n.7.

In her Complaint, West asserts claims under Title II of the ADA, 42 U.S.C. § 12131, and under 42 U.S.C. § 1983, alleging that Defendants discriminated against her son and that they violated his Fourth Amendment right to be free from unreasonable seizures as well as his Fourteenth Amendment right to medical needs. More particularly, West asserts the following.

- Count I (DeKalb County): Discrimination under Title II of the ADA, [*Id.* at ¶¶ 55–79];

- Count II (DeKalb County): Failure to Accommodate under Title II of the ADA, [*Id.* at ¶¶ 79–94];

- Count III (DeKalb County): Failure to Train via § 1983, [*Id.* at ¶¶ 95–102];

- Count IV (various individual Defendants): Excessive Force via § 1983. [*Id.* at ¶¶ 103–21];

- Count V (Ditmore and Payne): Deliberate Indifference to Medical Needs via § 1983, [*Id.* at ¶¶ 110–21];

- Count VI (all individual Defendants): Failure to Intervene via § 1983, [*Id.* at ¶¶ 122–26]; and

- Count VII: Attorney Fees under § 1988, [*Id.* at ¶¶ 127–28].

### *Factual Background*

The underlying incident occurred on April 16, 2019. [*Id.* at ¶ 18]. That day, Mr. West, who suffered from a "seizure disorder" experienced a severe episode of "behavioral crisis" that West terms "excited delirium." [*Id.* at

¶¶ 17–18]. West explains that "[e]xcited delirium is not itself a medical diagnosis, but rather a phenomenon associated with certain types of substance abuse or psychiatric/neurological disorders." [*Id.* at ¶ 19].

According to West, persons experiencing excited delirium "exhibit extreme agitation, hyperactivity, hyperthermia, confusion, and disregard of pain." [*Id.* at ¶ 19]. When Mr. West began experiencing this and "could not control his symptoms," West "called DeKalb County 9-1-1" and reported that her son "was having a seizure, that she could not control him, and that she needed help." [*Id.* at ¶ 21].

DeKalb County fire fighters arrived for emergency treatment. [*See id.* at ¶ 23]. When they arrived "[t]hey could see that Mr. West was highly agitated, hyperactive, confused, and not in control of his behavior." [*Id.* at ¶ 23]. As a result, the fire fighters determined to restrain Mr. West in the prone position until further assistance arrived. [*Id.* at ¶¶ 27–28]. Fire Captain Ditmore arrived and "took command of the scene." [*Id.* at ¶ 33]. He ordered that Mr. West be given a sedative to better control his agitated and threatening behavior, before transporting him to the hospital. [*Id.* at ¶ 34]. Fire fighters administered the sedative to Mr. West and continued to restrain him in the prone position, while waiting for the sedative to take effect. [*Id.* at ¶¶ 35, 47].

DeKalb County police officers then arrived to the scene to assist the fire fighters. [*Id.* at ¶ 38]. Captain Ditmore requested that the police officers handcuff Mr. West, while the sedatives were working to take effect. [*Id.* at ¶ 39]. Officers Paxton and Jones then arrived and "stood by as support" for the other officers and fire fighters. [*Id.* at ¶ 46]. Captain Ditmore made a status report over the radio to his unit. [*Id.* at ¶ 41]. And following the call over the radio, Captain Ditmore then observed Mr. West calming as a result of the sedatives, so he ordered that the handcuffs be removed and be replaced with soft restraints. [*Id.* at ¶¶ 48–49].

As they began to transport Mr. West to the emergency vehicle, however, Mr. West's respiratory rate began to drop and he began suffering cardiac arrest. [*Id.* at ¶ 50]. Mr. West was rushed to the hospital where he lingered in a coma for several days before passing away on August 25, 2019. [*Id.* at ¶ 51].

## ARGUMENT

### I.     All official capacity claims should be dismissed as redundant.

West attempts to sue all named individual defendants in both their individual and official capacities. However, it is axiomatic that the official capacity claims are redundant of her claims against DeKalb County. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (holding official capacity

suits represent only another way of pleading an action against an entity of which an officer is an agent); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Because West has also sued DeKalb County, her official capacity claims "are functionally equivalent" to her claims against the county, and thus, they should be dismissed. *Busby*, 931 F.2d at 776; *see also Gibson v. Hickman*, 2 F. Supp. 2d 1481, 1482–83 (M.D. Ga. 1998) (dismissing official capacity claims).

## II.   The wrongful death claims are barred by the statute of limitations.

West's wrongful death claims should be dismissed as barred by the statute of limitations. "A survivor's statutory claim for a decedent's wrongful death and an estate's common-law claim for the same decedent's pain and suffering are distinct causes of action." *Hicks v. Univ. Health Servs., Inc.*, 364 Ga. App. 769, 771 n.7 (2022) (quoting *Mays v. Kroger Co.*, 306 Ga. App. 305, 306 (2010)). Nevertheless, wrongful death claims under O.C.G.A. §§ 51-4-1, *et seq.*, are still governed by the two-year statute of limitations period imposed by O.C.G.A. § 9-3-33 for personal injury. *Armstrong v. Cuffie*, 311 Ga. 791, 796 (2021) ("Generally, actions for wrongful death and personal injury must be brought within two years after the right of an action accrues."); *Adair v. Baker Bros., Inc.*, 185 Ga. App. 807, 808 (1988) (holding O.C.G.A. § 9-3-33

applies in a "wrongful death action"). Because the cause of action for wrongful death accrues upon death, and because Jamon West died on August 25, 2019—more than two years before the filing of the Complaint—the claims for wrongful death are time-barred.

West asserts in the Complaint that her claims are timely because they were tolled by O.C.G.A. § 9-3-99. [Doc. 1, Compl. at ¶ 15]. But O.C.G.A. § 9-3-99 tolls the limitation period only for the *victim* of an alleged crime. O.C.G.A. § 9-3-99. Because West herself is not the *victim* of any alleged crime, O.C.G.A. § 9-3-99 does not toll the two-year limitations period for the wrongful death claims. The Court of Appeals of Georgia recently and unequivocally held so in *Hicks*. 364 Ga. App. at 776–77 (holding O.C.G.A. § 9-3-99 did not toll survivor's claim for wrongful death because survivor was not victim, decedent was). Therefore, all claims that West asserts, premised on the wrongful death of Jamon West, are due to be dismissed.[2]

## III.   Officers Jones and Paxton are entitled to qualified immunity.

West does not allege that Officer Paxton or Jones directly violated Mr. West's constitutional rights; rather, she alleges they failed to intervene and prevent others' constitutional violations. But West's claims against

---

[2] In effect, this means West cannot recover for Mr. West's "full value of life," O.C.G.A. § 51-4-1(1), only for his pre-death pain and suffering.

Officers Paxton and Jones for failure to intervene, [Doc. 1, at ¶¶ 122–26], fail on account of their qualified immunity. Qualified immunity is meant to protect "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011). A § 1983 plaintiff bears a heavy burden in overcoming this immunity. *Foy v. Holston*, 94 F.3d 1528, 1533 (11th Cir. 1996) ("The burden is not easily discharged[.]"). West cannot overcome it here because she cannot demonstrate a clearly established constitutional violation.[3]

## A.  A failure to intervene claim fails without a clearly established violation of a constitutional right.

Although police officers can be held liable under § 1983 for failing to intervene in another officer's use of excessive force when they are in a

---

[3] To be sure, the burden is on West to overcome qualified immunity because Officers Paxton and Jones were clearly acting within their discretionary authority. West does not allege otherwise, nor could she possibly demonstrate so. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265, 1266–67 (11th Cir. 2004) (explaining the discretionary authority analysis). As police officers, Georgia law entrusts them with the authority to respond to incidents, like what occurred here, and even detain individuals for emergency treatment, where necessary. O.C.G.A. § 45-9-81(7) (defining a law enforcement officer as having duties including the "protection of life" and the "preservation of public order"); *see* O.C.G.A. § 37-3-42 (authorizing peace officers to detain individuals for involuntary treatment); *see also Ellison v. Hobbs*, 786 Fed. App'x 861, 873–74 (11th Cir. 2019) (holding officers were acting within their discretionary authority when responding and assisting emergency medical personnel in detaining plaintiff for involuntary treatment during severe mental health episode).

position to intervene and they fail to do so, *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023), obviously, there must be an underlying constitutional violation in the first instance. An officer cannot be liable for failing to intervene in something that does not amount to a constitutional violation. *Id.*; *Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. 2019) ("[S]ince no Fourth Amendment violation was established, the Officers who allegedly failed to intervene to stop the use of force . . . are also entitled to qualified immunity."). Furthermore, the constitutional violation itself must be clearly established; if a reasonable officer on the scene could conclude that such conduct was *not unlawful*, then that officer, like the officer engaged in the actual conduct, cannot be held liable simply for such mistaken belief. *Bussey-Morice v. Kennedy*, 657 Fed. App'x 909, 915 (11th Cir. 2016) ("Similarly, when an officer's force does not violate a clearly established right, other officers' failure to intervene does not violate a clearly established right."); *see Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021). In other words, West must demonstrate both prongs of the qualified immunity analysis and then establish that Officers Paxton and Jones were in a position to intervene and failed to do so. *Helm*, 989 F.3d at 1278.

12

**B.      The Complaint does not allege a constitutional violation.**

West's Complaint does not state an underlying excessive force claim against anyone. "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985)). This standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. As with other claims under the Fourth Amendment, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Plumhoff*, 572 U.S. at 774. Certain factors are certainly relevant and guide the inquiry, but "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396. (quotation omitted).

West admits in the Complaint that Mr. West was suffering a severe "behavioral crisis," in which he was exhibiting "extreme agitation." [*See* Doc. 1, at ¶¶ 18–19]. Mr. West had lost self-control of his behavior, and it

frightened his mother to the point that she called 911. [*Id.* at ¶¶ 20–21]. When Firefighters Winkler and Lakatos arrived, "[t]hey could see that Mr. West was highly agitated, hyperactive, confused and not in control of his behavior." [*Id.* at ¶ 23]. As a result, they had to physical restrain Mr. West in order to evaluate and treat him. [*Id.* at ¶ 27].

Once Captain Ditmore arrived, he too recognized that Mr. West's behavior was so extreme that a sedative was necessary before taking Mr. West in for treatment. [*Id.* at ¶¶ 33–34]. DeKalb Police then arrived, and Captain Ditmore requested that Mr. West be handcuffed, while the sedatives were working to take effect. [*Id.* at ¶ 39]. Importantly, Officers Paxton and Jones did not arrive until after this had occurred. [*Id.* at ¶ 45].

As West acknowledges, they did not participate in restraining Mr. West during the brief period the sedatives were beginning to work. [*Id.* at ¶ 46]. Once Captain Ditmore made the status report, he then recognized that the sedatives began to take effect and "Mr. West was calm." [*Id.* at ¶47]. Thus, Captain Ditmore determined that it was safe to remove the handcuffs and transition Mr. West to soft restraints. [*Id.* at ¶ 49].

That is the extent of West's allegations. No one could reasonably construe those allegations as amounting to excessive force. Rather, West's own allegations merely describe community caretakers trying to do their

level-best to treat someone suffering from a severe mental health crisis. West does not allege that any of the individual defendants lacked probable cause, much less arguable probable cause to effect the initial seizure and restraint. *See Ellison v. Hobbs*, 786 Fed. App'x 861, 876 (11th Cir. 2019) ("Here, even considering Ellison's mixed signals, the defendants nonetheless had considerable and reasonable cause for concern. They . . . actually observed Ellison's clear and serious medical problems."). Nor can West dispute that the police officers were authorized to assist the firefighters with the emergency medical treatment, and even seize Mr. West and take him into custody for purposes of treatment, even involuntary, if necessary. O.C.G.A. § 37-3-42(a). West simply alleges that the prone-restraint itself was excessive. But West cites nothing even suggesting that officers use excessive force when they briefly restrain an individual in the prone position under circumstances like this.

In *Cottrell v. Caldwell*, 85 F.3d 1480, 1492 (11th Cir. 1996), the Eleventh Circuit rejected an excessive force claim under somewhat similar circumstances. Officers responded to an emergency call regarding a suspect suffering from a serious mental health crisis, and ultimately restrained the suspect in the prone position in a police vehicle, with both hands and feet shackled. *Id.* at 1488. The Eleventh Circuit needed little analysis before

15

reversing the district court, which had denied summary judgment on the excessive force claim. *See id.* at 1492.

In *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1280–81 (11th Cir. 2004), the Eleventh Circuit likewise rejected an excessive force claim where officers had "fettered" a suspect to the point that his body was bowed and there were "fewer than 12 inches" between the suspects "wrists and ankles" behind his back. *Id.* at 1278. The officers did so, even after gaining compliance with pepper spray. *Id.* at 1280–81. The Eleventh Circuit concluded that even this form of severe prone restraint was not excessive force as a matter of law. Here, however, the firefighters and officers merely held Mr. West in the prone position with his hands cuffed behind his back long enough for the sedatives to take effect. As West admits, Mr. West was released from the handcuffs and given soft restraints as soon as the sedatives began working and Mr. West began calming. Accepting West's factual allegations as true, West simply does not plausibly allege excessive force in violation of the Fourth Amendment.

## C.   West cannot demonstrate clearly established law prohibiting the conduct.

The Court need not reach prong two of the qualified immunity analysis, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts may exercise

discretion in the order of the analysis), which asks whether the constitutional right at issue was clearly established by a relevant court, with the requisite degree of particularity, at the time of the complained-of conduct. *See, e.g.*, *D.C. v. Wesby*, 138 S.Ct. 577, 589–91 (2018). Nevertheless, even if the Court were to reach the issue, West's allegations of excessive force fail under prong two. Given the above-cited cases, finding *no* excessive force in circumstances more extreme than this, West cannot possibly cite to clearly established law that forbade the officers' actions, here.

In short, because West's Complaint does not plausibly allege a clearly established constitutional violation as against the other officers, she does not plausibly allege that Officers Paxton and Jones are liable for failing to intervene.

## IV.  The *Monell* claims against DeKalb County fail.

In Count III, West asserts a § 1983 claim against DeKalb County under *Monell v. N.Y. Dept. of Soc. Servs.*, 489 U.S. 378 (1989), and its progeny, for its alleged failure to train its fire fighters and police officers on use of prone restraint. "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). While the Supreme Court concluded that local governments may be held liable under § 1983 "for their *own* illegal acts," the Court rejected the notion that § 1983 "incorporate[d] doctrines of

vicarious liability." *Id.* at 749. Thus, under *Monell* a plaintiff must plead and prove the following elements: (1) that his or her constitutional rights were violated; (2) that the entity had a policy or custom that constituted deliberate indifference to the plaintiff's constitutional rights; and (3) that the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). These "strict limitations on municipal liability under § 1983" ensure that liability is not "based on the doctrine of respondeat superior." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

West proceeds under the failure to train theory espoused in *City of Canton v. Harris*, 489 U.S. 378 (1989); that is, DeKalb County was deliberately indifferent to the need for better training under the circumstances presented. For two reasons, this claim fails, though.

First, as discussed above, West cannot demonstrate a violation of her Fourth Amendment right against unreasonable seizures, so her *Monell* claim necessarily fails for this reason: an underlying constitutional violation is a predicate element for purposes of *Monell* liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of

18

constitutionally excessive force is quite beside the point."); *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 821 (11th Cir. 2017); *Gainor v. Douglas County*, 59 F. Supp. 2d 1259, 1291 (N.D. Ga. 1998).

Second, even assuming West does state a constitutional violation, she still fails to plausibly allege deliberate indifference on the part of the County that caused the injury. To satisfy this standard, West must allege sufficient facts showing a pattern of similar constitutional violations that would have put DeKalb County on notice of the need for better training. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (quotation omitted)); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015).

Although West alleges that DeKalb County was on notice of the need to train its employees regarding the prone restraint, [Doc. 1, at ¶ 97], this is a conclusory allegation that is not entitled to the presumption of truth, since "no facts are alleged to support that conclusion." *Weiland*, 792 F.3d at 1329 (affirming dismissal of failure to train claim for lack of factual allegations showing "pattern of similar constitutional violations by untrained employees"). West alleges no facts from which the inference can be drawn

19

that DeKalb County officers have encountered individuals suffering from excited delirium and that they have routinely positioned them in the prone position in such egregiously unlawful fashion such that liability could arise as against DeKalb County (even assuming the truth of West's allegation that no training was given). *See Estate of Shultz v. Bd. of Regents of Univ. Sys. of Ga.*, 554 F.Supp.3d 1274, 1280 (N.D. Ga. 2021) ("Plaintiffs admit that they have not presented any allegations which show a pattern of similar constitutional violations involving police officers and Georgia Tech students experiencing mental health issues which would put officials on notice of a need to for further training."). Thus, for this reason, too, the *Monell* claim fails. *See also Baker v. City of Atlanta*, --- F.Supp.3d ---, Case No. 1:21-cv-4186-MLB, 2023 WL 2583116 at *3 (N.D. Ga. Mar. 20, 2023) (dismissing failure to train claim premised on police officer training for failure to state a claim); *Noel v. Clayton County*, Case No. 1:15-cv-2404-AT, 2016 WL 11794207 at *10 (N.D. Ga. Sept. 21, 2016) ("Plaintiffs Complaint suffers many of the same deficiencies as those present in *Weiland*, and then some.").

## V.   The ADA claims fail as a matter of law.

Finally, in Counts I and II, West asserts claims under Title II of the ADA premised on Mr. West's encounter with police and fire officials. These claims fail as a matter of law.

20

**A.     The Court should reject application of Title II of the ADA to ad hoc police encounters.**

The Eleventh Circuit has "never addressed whether police officers can violate Title II of the ADA." *Estate of Osorio v. Miami-Dade County*, 717 Fed. App'x 957, 957 (11th Cir. 2018). In *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1085 (11th Cir. 2007), the Eleventh Circuit assumed without deciding that a claim could arise, but then rejected the plaintiff's claim on the merits. *Id.* at 1085–89; *see Ingraham v. Kubik*, 20 F.4th 1241, 1257 (11th Cir. 2022) ("Turner argues that . . . Title II does not apply to police encounters. The latter argument *may* conflict with precedent . . . . But we need not address that argument because we conclude that vicarious liability is unavailable." (emphasis added, citing *Bircoll*, 480 F.3d at 1084–85)); *see also Welch v. City of Hartselle*, 423 F.Supp.3d 1277, 1285 (N.D. Ala. 2019).

The circuits are currently split on the issue. *Compare Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 200), *with Haberrle v. Troxell*, 885 F.3d 170, 178–79 (3rd Cir. 2018). And when the Supreme Court granted certiorari to address the issue, the Court ultimately dismissed the question presented as improvidently granted. *City & County of Sacramento v. Sheehan*, 575 U.S. 600, 610 (2015). This Court should side with the Fifth Circuit and hold that Title II of the ADA does not apply to ad hoc police encounters.

Title II's discrimination provision, 42 U.S.C. § 12132, cannot be interpreted to reach police investigating, arresting, or performing community caretake functions in exigent circumstances. This sort of activity is not something that the plaintiff "participates" in and from which there may be a "benefit." *See Sheehan*, 575 U.S. at 609 (noting argument). As a matter of text, this simply is not encompassed under Title II of the ADA. *See Rosen v. Montgomery County*, 121 F.3d 154, 157 (4th Cir. 1997) ("Rosen clearly has a disability, but calling a drunk driving arrest a 'program or activity' of the County, the 'essential eligibility requirements' of which (in this case) are weaving in traffic and being intoxicated, strikes us as a stretch of the statutory language and of the underlying legislative intent.").

**B.    West does not plausibly allege deliberate indifference.**

Even if the Court holds that Title II can be applicable here, West cannot state a claim premised on vicarious liability principles, which she seemingly seeks to do. [Doc. 1, at ¶¶ 72–75 (disparate treatment by officers), ¶¶ 89–92 (failure to accommodate by officers)]. Binding precedent forecloses a theory of vicarious liability under the ADA. *Ingram v. Kubik*, 30 F.4th 1241, 1257–59 (11th Cir. 2022). Therefore, to the extent West premises her claims in Counts I and II upon vicarious liability, those claims must fail.

Instead, where liability has been assumed to exist in circumstances like this, the Eleventh Circuit has made clear that deliberate indifference is necessary to sustain a claim for compensatory damages. *Id.* at 1257–59. West must allege that an appropriate DeKalb County official with authority to address the discrimination knew about it and failed to do anything. But like her shortcomings under *Monell*, West does not allege sufficient facts that plausibly suggest deliberate indifference on the part of the County. *See id.* at 1259 (affirming dismissal of Title II claim). West does not plead past instances of discrimination, such that she could demonstrate knowledge on the part of an appropriate official with the County sufficient for deliberate indifference. *Id.* at 1259 ("As the district court concluded, Ingram failed to allege that Turner had any actual knowledge of discrimination against people with disabilities in his department."). Accordingly, the ADA claims for compensatory damages must fail.

### C.   West's proposed modifications are per se unreasonable.

Finally, West does not plausibly allege a failure to accommodate claim for a separate reason. *See Rylee v. Chapman*, 316 Fed. App'x 901, 906 (11th Cir. 2009) ("A plaintiff can proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations."). Her proposed modifications are per se unreasonable. Given the exigencies of the

circumstances, imposing a blanket-ban on prone restraints for individuals who present a safety concern to the officers and others, at least until the person or suspect is secured and no longer a threat, is per se unreasonable. *See Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1085–86 (11th Cir. 2007) ("In other words, the question is whether, given . . . safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety.").

In *Bircoll*, the Eleventh Circuit rejected a failure to accommodate claim premised on allowing for road-side interpreters to assist in DUI investigations and arrests of persons with disabilities. "Considering the practical and public-safety interests that the police have in quickly testing and securing a DUI suspect, the Eleventh Circuit concluded that the plaintiff failed to state an ADA claim." *Vila v. Miami-Dade County*, 65 F. Supp. 3d 1371, 1384 (S.D. Fla. 2014) (similarly rejecting failure to accommodate claim in exigent circumstances). Here, fire fighters and officers "responded to an emergency call for assistance, and found Mr. [West] behaving erratically[.]" *Id.* They were forced to subdue and restrain Mr. West until the sedatives could take effect before taking him for treatment. *See id.* (rejecting accommodation claim premised on requiring officers to call crisis intervention

24

team). Until Mr. West was safely secured and under control, it would be per se unreasonable to prohibit officers from restraining him, or anyone else, in the prone position. This Court should not be dictating police practices through tenuous claims of alleged disability discrimination.

In any event, this sort of claim does not give rise to compensatory damages absent intentional discrimination or deliberate indifference, which, as discussed above, West does not allege. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) ("In the ordinary course, proof of a Title II . . . violation entitles a plaintiff only to *injunctive relief*." (emphasis added)). And West pleads no claim for injunctive relief to effectuate the accommodation claim.

## CONCLUSION

For the reasons above, the Court should GRANT Defendants DeKalb County, Officer Paxton, and Officer Jones's Motion to Dismiss and West's claims against these Defendants should be DISMISSED.

Respectfully submitted this 26th day of June, 2023.

## LOCAL RULE 7.1D CERTIFICATE

This Brief was prepared using Century Schoolbook 13-point font.

**HALL BOOTH SMITH, P.C.**

*/s/ Russell A. Britt*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664

*Counsel for Defendants DeKalb County, Off. D. Paxton, and Off. C. Jones*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel; 404-954-5000
Fax:  404-954-5020
Email:  dware@hallboothsmith.com
Email:  rbritt@hallboothsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I filed this **Defendants DeKalb County, Jones, and Paxton's Brief in Support of Their Motion to Dismiss** with the Court's CM/ECF System, which will send electronic notification to all counsel of record.

Respectfully submitted this 26th day of June, 2023.

**HALL BOOTH SMITH, P.C.**

*/s/ Russell A. Britt*
R. DAVID WARE
Georgia Bar No. 737756
RUSSELL A. BRITT
Georgia Bar No. 473664

*Counsel for Defendants DeKalb County, Off. D. Paxton, and Off. C. Jones*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel; 404-954-5000
Fax:  404-954-5020
Email:  dware@hallboothsmith.com
Email:  rbritt@hallboothsmith.com