IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YVONNE M. WEST, *individually*          :
*and as administrator of the estate of* :
Jamon West,                             :
                                        :
      Plaintiff,                       :
                                        :
v.                                      :          CIVIL ACTION NO.
                                        :          1:23-cv-01907-LMM
                                        :
DEKALB COUNTY, GEORGIA et al.,          :
                                        :
      Defendants.                      :

## <u>ORDER</u>

This case comes before the Court on Defendants' Motions to Dismiss [41,

43, 57]. Defendants filed their Motions in two groups: first, DeKalb County with

DeKalb County Police Sgt. M. Williams and Officers Timothy Lattimore, C. Jones,

and Deion Paxton ("the DCPD Defendants"), Dkt. No. [41]; and second, DeKalb

County Fire Rescue Captain Phillip Ditmore, Senior Firefighter David Kelley,[1]

Senior Firefighter Jason Winkler,[2] Firefighter Tiffany Payne, and Melissa Van

---

[1] In the original caption, Defendant David Kelley's name is misspelled as Kelly.

[2] Defendant Winkler initially moved to dismiss Plaintiff's Complaint for lack of personal service. Dkt. No. [43]. He later waived service, Dkt. No. [55], and filed a new Motion to Dismiss without the service objection, which is otherwise identical to his original arguments. Dkt. No. [57]. Accordingly, the Court denied Defendant Winkler's initial service arguments as moot and now considers his remaining arguments together with the other DCFR Defendants. Dkt. No. [58].

Wie ("the DCFR Defendants"), Dkt. No. [43].[3] After due consideration, the Court enters the following Order.

## I.   BACKGROUND

Plaintiff Yvonne West brings this case individually and as administrator of her son Jamon West's ("West") estate. At the time of the relevant incident, West was 42 years old and lived with his mother in DeKalb County. Dkt. No. [28] ¶ 18. West had a seizure disorder. Id. In August 2019, West suffered a behavioral crisis from his disorder, known in the law enforcement community as "excited delirium." Id. ¶ 19. Excited delirium is not a medical diagnosis, but it is a phenomenon associated with certain psychiatric and neurological disorders. Id. ¶ 20. Symptoms include extreme agitation, hyperactivity, hyperthermia, confusion, and disregard of pain. Id. Plaintiff asserts that it is well-known in the law enforcement and medical communities that using a prone restraint on someone with excited delirium can create a heightened risk of cardiac arrhythmia and asphyxia. Id. ¶¶ 25–27.

During the crisis, West could not control his symptoms and asked his mother to help him. Id. ¶ 21. Plaintiff called 911 and told them that her son was having a seizure and that she could not control him. Id. ¶ 22. DeKalb County Fire Rescue ("DCFR") officers responded first. Id. ¶ 24. Defendants Winkler and

---

[3] The remaining four Defendants in this action (Defendants Fleming, Lakatos, Brandon Williams, and Burton) have not been served. The Court granted Plaintiff's Motion for Extension of Time to Perfect Service on October 24, 2023, and extended that time again on January 17, 2024. Dkt. Nos. [60, 63].

Lakatos discovered West highly agitated, hyperactive, confused, and unable to control his behavior. Id. They physically restrained West in a prone position with his face on the ground. Id. ¶ 28. Defendants Ditmore, Kelley, Van Wie, and Fleming then arrived and assisted Defendants Winkler and Lakatos in restraining West. Id. ¶ 29. In total, four to five DCFR officers were applying force to West's extremities and back. Id. ¶ 30. Plaintiff pleaded with Defendants to stop restraining West and told them that West could not breathe with his face pressed in the grass. Id. ¶ 31.

Defendant Ditmore then instructed Defendant Payne to administer a "chemical restraint" to West, meaning an intramuscular sedative injection. Id. ¶ 35. Defendant Payne gave West the maximum dose under DeKalb County policy: 5mg of Haldol and 5mg of Versed. Id. ¶ 36. Both Haldol and Versed are central nervous system depressants with known risks of respiratory depression. Id. ¶¶ 37–38.

When DeKalb County Police Department ("DCPD") officers arrived, Defendant Ditmore asked them to handcuff West. Id. ¶ 40. Defendants Lattimore and Brandon Williams cuffed West's hands behind his back; they did not use soft restraints, and they kept him in a prone position. Id. ¶¶ 41–43. Defendants Jones and Paxton arrived while West was in this position and did not intervene. Id. ¶¶ 48–49. Once West was calm, Defendant Ditmore ordered that the handcuffs be replaced with soft restraints. Id. ¶ 52.

Then, while Defendants were transporting West, he went into cardiac arrest. Id. ¶ 53. Defendants transported West to the hospital, where he remained in a coma for several days until he passed away. Id. ¶ 54. The DeKalb County Medical Examiner performed an autopsy and determined that West died of "delayed complications of cardiorespiratory arrest due to probable excited delirium and physical restraint." Id. ¶ 55 (alterations adopted). DeKalb County conducted an internal investigation and determined that Defendants acted in accordance with county policy. Id. ¶ 57. In 2021, the DeKalb County District Attorney decided not to press any charges against Defendants. Id. ¶ 15.

Plaintiff brings seven counts against Defendants under Title II of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983. Counts I and II allege ADA violations against Defendant DeKalb County, and Counts III through VI are § 1983 claims: Failure to Train against DeKalb County (Count III); Excessive Force against Defendants Ditmore, Lakatos, Winkler, Kelley, Van Wie, Fleming, Lattimore, and Brandon Williams (Count IV); Deliberate Indifference to Medical Needs against Defendants Ditmore and Payne (Count V); and Failure to Intervene against all individual Defendants (Count VI). In Count VII, Plaintiff seeks attorneys' fees and litigation expenses. Defendants move to dismiss for failure to state a claim. Dkt. Nos. [41, 43, 57].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

4

relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads factual content necessary for a court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). But this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

## III.  DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on various grounds. First, the DCPD Defendants and Defendant DeKalb County make six arguments for dismissal: (1) Plaintiff's official capacity claims against individual Defendants are redundant to the claims against DeKalb County; (2) Georgia's two-year

statute of limitations bars Plaintiff's wrongful death claims; (3) Plaintiff does not allege any facts against Defendant M. Williams; (4) qualified immunity bars Plaintiff's claims against Defendants Lattimore, Paxton, and Jones; (5) Plaintiff does not properly state a Monell claim against Defendant DeKalb County; and (6) Plaintiff does not properly state an ADA claim against Defendant DeKalb County. Dkt. No. [41]. The DCFR Defendants move to dismiss on three of the same grounds as the DCPD Defendants: (1) Plaintiff's official capacity claims against the DCFR Defendants are redundant to the claims against DeKalb County; (2) Georgia's statute of limitations bars Plaintiff's individual claims; and (3) qualified immunity bars Plaintiff's individual capacity claims against the DCFR Defendants. Dkt. No. [43]. The Court considers Defendants' arguments in turn.

### A. Redundant Claims

As a threshold matter, Plaintiff does not contest Defendants' argument that any official capacity claims against individual Defendants would be redundant given her claims against DeKalb County. Instead, Plaintiff explains that she does not seek to bring any official capacity claims against the individual defendants; she simply stated official capacity in her caption because the ADA does not provide for individual liability under Title II. Dkt. No. [49] at 9–10; Dkt. No. [50] at 9–10. Thus, the Court need not address Defendants' arguments regarding redundant claims. The Court construes all allegations against individual Defendants as individual capacity claims and understands Plaintiff's ADA counts as claims against Defendant DeKalb County.

6

**B. Statute of Limitations**

Next, Plaintiff acknowledges in her Complaint that Georgia's two-year statute of limitations would apply to her claims. Dkt. No. [28] ¶¶ 15–16. Nonetheless, Plaintiff asserts that the limitations period was tolled until prosecution of Defendants ended in April 2021 under O.C.G.A. § 9-3-99 or until the Estate of Jamon West was established in February 2023 under O.C.G.A. § 9-3-92. Id. Defendants contend that neither tolling statute applies. Dkt. No. [41-1] at 9–10; Dkt. No. [43-1] at 7–8. The Court agrees with Plaintiff.

First, O.C.G.A. § 9-3-99 tolls the limitations period for a tort action "that may be brought by the victim of an alleged crime" until the prosecution of that crime is terminated. Defendants argue that any wrongful death claims are time-barred because this statute does not toll claims for plaintiffs who are not the victims of the crime. Dkt. No. [41-1] at 9–10; Dkt. No. [43-1] at 7–8. Plaintiff responds that she is not asserting any wrongful death claims; instead, she seeks to vindicate West's rights for alleged violations that occurred before his death. Dkt. No. [49] at 10–15; Dkt. No. [50] at 10–15. Despite Plaintiff's explanations, Defendants insist that she brings wrongful death claims to recover for the full value of West's life. Dkt. No. [52] at 3–6. Plaintiff does not request such damages in the Complaint, nor does she bring a wrongful death claim under Georgia law. Dkt. No. [28]. She only seeks damages for injuries to West that occurred during his life under § 1983 and the ADA. Thus, Plaintiff's claims are not time-barred.

Defendants are correct that <u>Hicks v. Universal Health Services, Inc.</u>, 874 S.E.2d 877 (Ga. Ct. App. 2022), holds that O.C.G.A. § 9-3-99 does not toll the limitations period for wrongful death actions brought by a decedent's parent when the parent is not a victim of the crime. But <u>Hicks</u> does not apply to this case, which has no wrongful death claims. <u>Hicks</u>, 874 S.E.2d at 883 ("The victims of the crime are deceased, so they cannot bring the present wrongful death claims . . . . [T]he Tolling Statute does not apply to the Survivor claims brought by the parents of the crime victims in this case."). <u>Hicks</u> does not address whether the tolling statute would apply to claims brought by an estate on a decedent's behalf, which are distinct from wrongful death claims. <u>Cf.</u> <u>Smith v. Ford</u>, 488 F. Supp. 3d 1314, 1321 n.5 (M.D. Ga. 2020) (recognizing that O.C.G.A. § 9-3-99 would toll § 1983 claims brought by a decedent's estate until the investigation into the matter concluded).

Second, O.C.G.A. § 9-3-92 provides that "[t]he time between the death of a person and the commencement of representation upon his estate . . . shall not be counted against his estate in calculating any limitation applicable to the bringing of an action" within five years. On this point, Defendants state only that the statute tolls the estate's claims, not survivor claims. Dkt. No. [41-1] at 10. In effect, Defendants explain that any wrongful death claims are time-barred, meaning that Plaintiff cannot recover for the full value of West's life. <u>Id.</u> Plaintiff does not contest this point. As Plaintiff explains, she brings all claims as administrator of the estate and only seeks to recover for injuries that West

suffered before his death. Dkt. No. [50] at 12–15. Plaintiff alleges that West's estate was not established until February 2023—a fact that Defendants do not dispute. Thus, even if O.C.G.A. § 9-3-33 does not apply, Defendants do not argue that there is no tolling under § 9-3-92 for Plaintiff's claims as administrator of West's estate. Accordingly, Plaintiff's claims are not time-barred, and the Court turns to the merits of Defendants' arguments.

### C. Qualified Immunity

Next, Defendants contend that qualified immunity bars Plaintiff's § 1983 claims against the individual Defendants. Specifically, Plaintiff alleges Excessive Force against Defendants Ditmore, Lakatos, Winkler, Kelley, Van Wie, Fleming, Lattimore, and Brandon Williams (Count IV); Deliberate Indifference to Medical Needs against Defendants Ditmore and Payne (Count V); and Failure to Intervene against all individual Defendants (Count VI). Defendants contend that Plaintiff failed to show a clearly established constitutional violation in Counts IV and V and that without a violation, there can be no liability for failure to intervene in Count VI. Dkt. No. [41-1] at 11–18; Dkt. No. [43-1] at 8–16. Without a clearly established constitutional violation, Defendants assert that they are entitled to qualified immunity on Counts IV through VI.

Before turning to the merits, the Court addresses the DCFR Defendants' argument that Plaintiff cannot bring any § 1983 claims against them because of their emergency responder status. The DCFR Defendants rely exclusively on Peete v. Metropolitan Government of Nashville and Davidson County, 486 F.3d

217 (6th Cir. 2007), for this argument. Dkt. No. [43-1] at 13 n.2, 15 n.3. In Peete, the Sixth Circuit found, "[W]here the purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate, there is no federal case authority creating a constitutional liability for the negligence, deliberate indifference, and incompetence alleged in the instant case." Peete, 486 F.3d at 221. That is not true in the Eleventh Circuit. For example, in Ingram v Kubik, 30 F.4th 1241 (11th Cir. 2022) and Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996), the Eleventh Circuit evaluated § 1983 claims against officers called to respond to mental health emergencies. Thus, the Court assumes without deciding that the DCFR Defendants are subject to suit and now turns to the merits of Defendants' qualified immunity defense.

To defeat a § 1983 claim with qualified immunity, a defendant must show that the officials were "acting within the scope of [their] discretionary authority at the time of the alleged misconduct." Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019). If a defendant meets this threshold, the burden shifts to the plaintiff to show that the officials violated a clearly established constitutional right. Id. There is no dispute that Defendants were acting within their discretionary authority. Dkt. No. [41-1] at 12 n.4; Dkt. No. [43-1] at 10–11. Thus, the Court must evaluate whether Defendants violated West's clearly established constitutional rights.

### 1. Excessive Force

Plaintiff's first § 1983 claim is for excessive force against the individual Defendants involved in his detention. Defendants argue that Plaintiff cannot satisfy either prong: they assert that there was no constitutional violation and that Plaintiff cannot show that Defendants' conduct violated clearly established law. Dkt. No. [41-1] at 12–16; Dkt. No. [43-1] at 12–14. Plaintiff contends that Defendants' use of force was excessive because using a prone restraint and handcuffing West with his hands behind his back while he was in a state of excited delirium constituted deadly force in a non-deadly situation—a clearly established Fourth Amendment principle. Dkt. No. [50] at 19. The Court agrees with Defendants.

Courts may consider the "constitutional violation" and "clearly established" elements of qualified immunity in either order. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The Court begins with the clearly established prong, and because it finds that Plaintiff has not satisfied it, does not address the constitutional violation prong. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful." Helm v. Rainbow City, 989 F.3d 1265, 1272 (11th Cir. 2021) (internal quotation marks omitted) (quoting District of Columbia v. Wesby, 583 U.S. 48, 63 (2018)). There are three routes to proving the clearly established law prong: (1) a materially similar case in binding precedent, (2) "a broader, clearly established principle" that should control the

situation, or (3) conduct "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent." Ingram, 30 F.4th at 1252 (quoting Patel v. City of Madison, 959 F.3d 1330, 1343 (11th Cir. 2020)).

Here, Plaintiff seeks to use a broader, clearly established principle. Such a principle "must be specific enough to give the officers notice of the clearly established right." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). For example, "the principle that officers may not use excessive force to apprehend a suspect is too broad a concept to give officers notice of unacceptable conduct." Id. The Supreme Court has emphasized that the court must determine "whether the violative nature of *particular* conduct is clearly established" and that "[s]uch specificity is especially important in the Fourth Amendment context." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Similarly, the Eleventh Circuit has explained, "To defeat a qualified immunity defense without a materially similar precedent on point, a Fourth Amendment plaintiff must show that an officer's 'conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official.'" Bradley v. Benton, 10 F.4th 1232, 1243 (11th Cir. 2021) (quoting Cantu v. City of Dothan, 974 F.3d 1217, 1232 (11th Cir. 2020)).

Plaintiff argues that Defendants violated the clearly established principle that "deadly force cannot be used in non-deadly situations." Mercado, 407 F.3d at

1160. Defendants respond that Plaintiff cannot meet the high standard for a "clearly established principle" because Plaintiff does not cite cases indicating that the use of prone restraints is *per se* deadly. Dkt. No. [52] at 11–12. The Court agrees with Defendant.

Although Plaintiff alleges that Defendants should have known that the use of the prone restraint during West's detention could be deadly, Plaintiff has not proven a clearly established principle to show that any reasonable officer at the scene would have that knowledge. Plaintiff relies on Mercado v. City of Orlando, 407 F.3d 1152, for the principle that non-deadly force cannot be used in non-deadly situations. There, the Eleventh Circuit found that the officers violated the clearly established principle that "[u]sing deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment." Mercado, 407 F.3d at 1160. The officers there found the plaintiff crying on the kitchen floor with a loose cord around his neck and a knife placed to his chest, ordered him to drop the knife twice, and then shot a rubber bullet at plaintiff's head from short range. Id. at 1160–61. The court described those facts as "so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point." Id. at 1160 (alteration adopted) (quoting Willingham v. Loughnan, 321 F.3d 1299, 1303 (11th Cir. 2003)).

This case is different. Here, West was "highly agitated, hyperactive, confused, and not in control of his behavior." Dkt. No. [28] ¶ 24. After the

sedative took effect, Defendant Ditmore ordered officers to replace the handcuffs with soft restraints. Id. ¶¶ 51–52. Although the use of handcuffs and the prone position violated DCFR policy and DOJ guidance, Plaintiff does not point to any clearly established law that would be sufficient to put the officers on notice that this conduct would amount to unconstitutional deadly force. Plaintiff's allegations that Defendants violated "widely accepted law enforcement practices" and well-known police guidance are not sufficient. Id. ¶¶ 25, 122.

Even when using a broader principle to show clearly established law, "only prior decisions from the United States Supreme Court, [the Eleventh Circuit], or the relevant state supreme court can put officers on notice regarding the constitutionality of their actions." Bradley, 10 F.4th at 1242–43. As Defendants argue, none of the cases cited involve the use of handcuffing an arrestee behind the back in the prone position. Dkt. No. [52] at 12. And while Plaintiff is correct that qualified immunity analysis requires consideration the particular facts and circumstances at hand, Dkt. No. [50] at 20–24, it also requires concrete law on the issue. Plaintiff distinguishes cases cited by Defendants, but she cites only Tampa v. Dillard, 20 F.4th 1020 (5th Cir. 2021), which is from the Fifth Circuit and thus does not create clearly established law in this Circuit sufficient to put Defendants on notice. Without case law showing that the use of a prone restraint and handcuffs on someone with excited delirium constitutes deadly force, Plaintiff has not proven that Defendants violated clearly established law.

Accordingly, Defendants are entitled to qualified immunity on Plaintiff's excessive force claim (Count IV).

### 2. Deliberate Indifference to Medical Needs

Next, Plaintiff contends that Defendants Ditmore and Payne violated West's constitutional rights with deliberate indifference to his medical needs. Specifically, Plaintiff alleges that these Defendants were aware that West faced increased risk of cardiorespiratory arrest and failed to take preventative measures to avoid that risk. Dkt. No. [49] at 21–22. Defendants argue that they are entitled to qualified immunity on this claim because their restraint did not violate clearly established law.[4] Dkt. No. [43-1] at 14. The Court agrees with Defendants.

The same qualified immunity framework applies here: because discretionary authority is undisputed, Plaintiff must prove that Defendants violated West's clearly established constitutional rights. For a deliberate indifference to medical needs claim, Plaintiff must show "that (1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer

---

[4] Defendants also argue that only an incarcerated plaintiff can state a claim for deliberate indifference. Dkt. No. [43-1] at 14. The Court assumes without deciding that Plaintiff can bring this claim even though West was not incarcerated. See, e.g., Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015) ("The Due Process Clause of the Fourteenth Amendment requires government officials to provide medical care to individuals who have been injured during apprehension by the police.").

disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence." Wade v. Daniels, 36 F.4th 1318, 1326 (11th Cir. 2022) (quoting Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015)). Plaintiff must also again prove that Defendants' actions violated clearly established law, meaning that the law was sufficiently clear that any reasonable official would know that this conduct was unlawful. Helm, 989 F.3d at 1272.

The Court again considers the clearly established prong first. Plaintiff does not cite any cases showing that Defendants' conduct violated clearly established law. In Plaintiff's response, she distinguishes cases that Defendants rely on, but she does not provide any cases or principles to show that Defendants violated clearly established law. For example, in Wade v. Daniels, cited by Defendants, the Eleventh Circuit held that officers were entitled to qualified immunity on a deliberate indifference to medical needs claim because the officers' conduct did not violate clearly established law. 36 F.4th at 1328. The court explained, "Although it is clearly established that an officer cannot ignore an individual's serious medical condition, we have not drawn a bright-line rule on how long before officers must seek medical care for a suspect that has been shot to constitute deliberate indifference." Id. (citations omitted). Thus, the Eleventh Circuit found that the officers "did not have fair warning that their four minute delay in not requesting medical care after a shooting involving a suspect could rise to a deliberate indifference claim." Id. Plaintiff argues that Wade is distinct from this case because West did not have a gunshot wound, but Wade is relevant

for its emphasis on the level of specificity required for clearly established law. Plaintiff does not reference any case law that would have provided notice to Defendants that using the prone restraint and handcuffs on West would violate his constitutional rights. Thus, like the defendants in <u>Wade</u>, Defendants Ditmore and Payne are entitled to qualified immunity.

Plaintiff asserts that DCFR policy prohibited the use of these restraints on excited delirium patients, but a local policy is not sufficient to defeat qualified immunity. <u>E.g.</u>, <u>Courson v. McMillian</u>, 939 F.2d 1479, 1487 (11th Cir. 1991) ("[T]he official's action must be evaluated against 'clearly established law,' consisting of *statutory or constitutional rights* that a reasonable person should have known." (emphasis added)). Plaintiff does not reference any similar cases or clearly established principles, nor does she contend that Defendants' conduct was "so obviously at the very core of" Fourteenth Amendment protections "that the unlawfulness of the conduct was readily apparent." <u>Ingram</u>, 30 F.4th at 1252 (11th Cir. 2022) (quoting <u>Patel</u>, 959 F.3d at 1343). Accordingly, Plaintiff has not satisfied her burden to show that Defendants violated clearly established law by using the chemical restraints, the prone position, and handcuffs on West while he was suffering from excited delirium. Thus, Defendants Ditmore and Payne are entitled to qualified immunity, and Plaintiff's deliberate indifference to medical needs claim is dismissed.

### *3. Failure to Intervene*

Plaintiff's last § 1983 claim against individual Defendants states that all individual Defendants observed the improper use of deadly force against West and failed to intervene, which contributed to West's suffering and death. Dkt. No. [28] ¶¶ 140–44. Defendants assert that Plaintiff cannot bring a failure to intervene claim without an underlying constitutional violation in her excessive force or medical needs claim. Dkt. No. [41-1] at 16–18; Dkt. No. [43-1] at 14. Because Plaintiff failed to satisfy her burden on both underlying claims, her failure to intervene claim must also be dismissed.[5] See Williams v. Radford, 64 F.4th 1185, 1199 (11th Cir. 2023) ("Of course, a failure-to-intervene claim requires an underlying constitutional violation. 'An officer cannot be held liable for failing to stop or intervene when there was no constitutional violation being committed.'" (alteration adopted) (quoting Sebastian v. Ortiz, 918 F.3d 1301, 1312 (11th Cir. 2019))); Bussey-Morice v. Kennedy, 657 F. App'x 909, 915 (11th Cir. 2016) ("Similarly, when an officer's force does not violate a clearly established right, other officers' failure to intervene does not violate a clearly established right.").

---

[5] This dismissal includes Defendant M. Williams. Defendant M. Williams moved to dismiss Plaintiff's Complaint because it did not include specific allegations against him. Dkt. No. [41-1] at 10–11. Plaintiff responded that Defendant M. Williams failed to intervene when he observed other Defendants using excessive force. Dkt. No. [50] at 24–25. Because the Court dismisses Plaintiff's failure to intervene claims against the DCPD Defendants, Defendant M. Williams is dismissed from this action. The Court need not address the parties' other arguments about him.

### D. <u>Monell</u> Liability

In Count III, Plaintiff alleges that Defendant DeKalb County is liable for failure to train its employees on the prone restraint used against West. Defendant DeKalb County argues that Plaintiff cannot establish <u>Monell</u> liability on these grounds because there was no underlying constitutional violation and no deliberate indifference. Dkt. No. [41-1] at 18–21. The Court agrees with Defendant.

First, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). In a failure to train claim, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees . . . evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>Id.</u> at 389.

To show deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train . . . in a particular area and the municipality made a deliberate choice not to take any action." <u>Lewis v. City of</u>

West Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)). A municipality "may be put on notice in two ways." Id. "First, if the [municipality] is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." Id. "Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious." Id.

The Court finds that Plaintiff has not sufficiently pled these elements. To impose Monell liability, a plaintiff must satisfy a high bar, and here, Plaintiff has not included enough facts to support this claim. First, even assuming that Plaintiff could show a constitutional violation, Plaintiff does not present any evidence of a pattern of violations that would put Defendant DeKalb County on notice of the need for additional training about excited delirium. Instead, Plaintiff alleges that DeKalb County policymakers had actual knowledge of the increased risk of death that prone restraints and behind-the-back handcuffing create for excited delirium patients, reflected in DCFR and DCPD policies regarding excited delirium. Dkt. No. [28] ¶¶ 63, 107. Plaintiff claims that this risk "has been widely known in the national law-enforcement community since at least the 1990s" and points to Department of Justice guidance from 1995 warning officers about this risk. Id. ¶¶ 105–06. Still, the Court finds that the likelihood of constitutional

violations was not "so high that the need for training would be obvious." <u>Lewis</u>, 561 F.3d at 1293.

As the Eleventh Circuit has explained, there is "a narrow range of circumstances" in which the need for training will be so obvious as to provide notice to a municipality. <u>Gold</u>, 151 F.3d at 1352. In <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989), the Supreme Court posited that a need for training may be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." It then posed the following hypothetical:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

<u>Id.</u> at 390 n.10 (citation omitted); <u>see also</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 63–64 (2011) (discussing "the narrow range of <u>Canton</u>'s hypothesized single-incident liability").

This case is not the same. Here, Plaintiff alleges that Defendant DeKalb County should have trained its officers on the use of specific restraints for people with "certain predisposing conditions, including excited delirium or recent extreme physical activity." Dkt. No. [28] ¶ 106. This level of specificity does not reach the "moral certainty" that the Supreme Court points to in <u>Canton</u>.

DOJ guidance about how the prone restraint increases risk in limited circumstances—meaning, for individuals with excited delirium or similar conditions—is not a well-established principle on the same level as excessive force used against fleeing felons. The only case law that Plaintiff provides to support her position is from the Central District of California, which is outside the Eleventh Circuit and not binding on this Court. Dkt. No. [50] at 26. Plaintiff cannot point to any Supreme Court or Eleventh Circuit jurisprudence in which the court accepted a showing that the need for training was "so obvious" as to support a Monell claim. See Rebalko v. City of Coral Springs, 552 F. Supp. 3d 1285, 1325 (S.D. Fla. 2020) ("[N]either the Supreme Court nor the Eleventh Circuit has ever determined that the need for more or different training was obvious. (alteration adopted and internal quotation marks omitted) (quoting Denham v. Corizon Health, Inc., 675 F. App'x 935, 942 (11th Cir. 2017))). Accordingly, the Court finds that Plaintiff has not adequately pled her Monell claim against Defendant DeKalb County.

**E. ADA Claims**

Finally, Plaintiff alleges that Defendant DeKalb County violated Title II of the ADA. Count I alleges failure to adopt reasonable modifications of policies and procedures, and Count II alleges failure to provide reasonable accommodations. Defendant DeKalb County contends that Title II does not apply to *ad hoc* police encounters, and that even if it did, Plaintiff has not alleged deliberate indifference or reasonable proposed modifications. Dkt. No. [41-1] at 21–26. For the reasons

explained below, the Court finds that Plaintiff has not adequately stated an ADA claim in either count.

Before considering the Title II elements, the parties dispute whether Title II applies to police encounters. The Eleventh Circuit has not clearly decided the issue, and other circuit courts are split. Bircoll v. Mia.-Dade Cnty., 480 F.3d 1072, 1083–84 (11th Cir. 2007); Ingram, 30 F.4th at 1257. The Court assumes without deciding that Title II applies to this case. In Bircoll v. Miami-Dade County, 480 F.3d 1072, the Eleventh Circuit evaluated a Title II claim under the "catch-all" provision in its final clause. The court did "not enter the circuits' debate about whether police conduct during an arrest is a program, service, or activity covered by the ADA" because it found that the plaintiff "could still attempt to show an ADA claim under the final clause in the Title II statute: that he was 'subjected to discrimination' by a public entity, the police, by reason of his disability." Bircoll, 480 F.3d at 1084. (quoting 42 U.S.C. § 12132). Here, Plaintiff appears to bring two claims under this clause.

Title II provides, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff must prove three elements for a successful Title II claim:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise

discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability.

Ingram, 30 F.4th at 1256–57 (alteration adopted) (quoting Silberman v. Mia. Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019)). And because Plaintiff seeks damages for the violation, Plaintiff must also prove that Defendant DeKalb County "engaged in intentional discrimination, which requires a showing of deliberate indifference." Id. (quoting Silberman, 927 F.3d at 1134). Deliberate indifference "requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood.'" Silberman, 927 F.3d at 1134 (alteration adopted) (quoting Liese v. Indian River Cnty. Hosp. Dist., 701 F.3d 334, 344 (11th Cir. 2012)).

In Count I, Plaintiff claims that Defendant DeKalb County failed to adopt reasonable modifications of its policies and procedures relating to excited delirium. Dkt. No. [28] ¶¶ 58–82. According to Plaintiff, existing DCPD and DCFR policies are unreasonably deficient. DCPD's policy does not prohibit the prone restraint of someone with excited delirium, but DCFR's policy states that "[t]he patient should never be oriented in a prone position." Id. ¶¶ 68, 69. Plaintiff contends that because prone restraints and handcuffing behind the back create substantial risk for excited delirium patients, DeKalb County policies should prohibit both practices and require that an excited delirium patient be placed in a seated or side-lying position. Plaintiff alleges that failure to adopt

those modifications to its policies constituted deliberate indifference and proximately caused West's death. Id. ¶¶ 78, 80.

A "reasonable modification" ADA claim "does not require a public entity to employ any and all means to make auxiliary aids and services accessible to persons with disabilities"; instead, it can only require "'reasonable modifications' that would not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." Bircoll, 480 F.3d at 1082. The reasonable modification inquiry is highly fact specific, and "[w]hat is reasonable must be decided case-by-case." Id. at 1085–86. When considering an emergency police response, "the question is whether, given criminal activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety." Id.

Here, Plaintiff proposes that Defendant DeKalb County should require officers "to place an excited-delirium subject in a seated or side-lying position after being cuffed" and should prohibit prone restraints of people with excited delirium. Dkt. No. [28] ¶¶ 67, 74. But DCFR's excited delirium policy already states, "The patient should never be oriented in a prone position." Dkt. No. [28] ¶ 68. And it was DCFR officers who restrained West in the prone position. Id. ¶¶ 28–29. Thus, Plaintiff's reasonable modification claim must fail. The DCFR policy already provided the relief that Plaintiff wants; Plaintiff only takes issue with the officers' failure to execute that policy, and a county investigation already

25

determined that the officers acted in accordance with policy. In effect, Plaintiff's argument is for vicarious liability—imposing liability on Defendant DeKalb County for Defendant Ditmore and the other DCFR Defendants' use of the prone restraint on West. Title II does not permit recovery for vicarious liability. See Ingram, 30 F.4th at 1259 (explaining that Title II only permits recovery against an entity when its official had actual knowledge of discrimination and failed to act).

To the extent that Plaintiff's argument would require Defendant DeKalb County to change DCPD excited delirium policy to include a prohibition on the prone restraint, the Court also finds the proposed modification unreasonable. In Bircoll, the Eleventh Circuit provided that "[t]he exigent circumstances presented by criminal activity and the already onerous tasks of police on the scene go" to the reasonableness of the requested ADA modification. Bircoll, 480 F.3d at 1085. Although West was not engaging in criminal activity when DCPD officers arrived, neither the Court nor the ADA is well-equipped to influence police policy to the extent that Plaintiff requests. Limiting officers' ability to respond to a quickly evolving situation could hinder their decision making and risk public safety. In Bircoll, the Eleventh Circuit found that requiring an interpreter to be present at a deaf individual's DUI stop was not reasonable because "DUI stops involve a situation where time is of the essence." Id. at 1086. Specifically, "field sobriety tests in DUI arrests involve exigencies that necessitate prompt action for the protection of the public." Id. Thus, despite DOJ guidance relating to Plaintiff's

proposed modifications, the Court finds that it cannot restrict Defendant DeKalb County's policies as Plaintiff requests. Moreover, without any allegations about prior similar instances, it is not clear that DeKalb County was deliberately indifferent to Plaintiff's rights. Accordingly, Count I must be dismissed.

Finally, in Count II, Plaintiff alleges that Defendant DeKalb County failed to provide reasonable accommodations for West at the scene. Plaintiff argues that as the commanding officer, Defendant Ditmore was deliberately indifferent to West's need for a safer restraint method. Dkt. No. [50] at 17–18. Defendant DeKalb County contends that Plaintiff cannot hold it vicariously liable for Defendant Ditmore's actions and that Plaintiff does not propose any reasonable modifications. Dkt. No. [41-1] at 23–26. Regardless, Defendant DeKalb County also contends that Plaintiff has not shown deliberate indifference because she has not shown any pattern of past discrimination to put DeKalb County on notice of the need for accommodations. Id.

Here, Plaintiff can only hold Defendant DeKalb County liable for Defendant Ditmore's actions if she can show that he was "'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf' and 'had actual knowledge of discrimination in the entity's programs and failed adequately to respond.'" Ingram, 30 F.4th at 1257 (quoting Silberman, 927 F.3d at 1134). Plaintiff's allegations do not rise to this level. Although Plaintiff contends that Defendant Ditmore knew of the risks to West and failed to accommodate him at the scene,

there is no indication that Defendant Ditmore can make any corrective measures on Defendant DeKalb County's behalf. Plaintiff argues that Defendant Ditmore is an official with sufficient authority based on cases in which the Eleventh Circuit found doctors and teachers had sufficient supervisory authority for liability to be imputed to their employers. Dkt. No. [50] at 18. This case is different because it involved an emergency response and only one interaction between West and Defendant Ditmore. Regardless, Plaintiff's allegations against Defendant Ditmore do not show that he was deliberately indifferent to West's rights. Defendant Ditmore ordered that handcuffs be replaced with soft restraints after he observed that West was calm, and a DeKalb County investigation found that the officers acted in accordance with county policy. Dkt. No. [28] ¶ 57. Thus, Plaintiff has not shown that Defendant Ditmore's actions can be imputed to Defendant DeKalb County, nor that Defendant DeKalb County itself was deliberately indifferent to West's federally protected rights. See, e.g., Silberman, 927 F.3d at 1134. Accordingly, Count II is also dismissed.

## IV.   CONCLUSION

In accordance with the foregoing, Defendants' Motions to Dismiss [41, 43, 57] are **GRANTED**. The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 2nd day of February, 2024.

**Leigh Martin May**
**United States District Judge**